1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11
12
13

KARLA GODINEZ, as an individual and on behalf of all others similarly situated,

Plaintiffs,

14

v.

15
16

MERRITT HOSPITALITY, LLC, and DOES 1-50, inclusive,

Defendant.

17

Case No. 8:20-cv-00941-JWH-KES

**ORDER ON MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT [ECF No. 45]**

18
19
20
21
22
23
24
25
26
27
28

# I. INTRODUCTION

Before the Court is the unopposed motion of Plaintiff Karla Godinez for Preliminary Approval of Class Action Settlement.[1]  The Court finds that the Motion is appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  For the following reasons, the Court **DENIES** the Motion **without prejudice**.

# II. BACKGROUND

## A.    Allegations and Procedural Summary

Godinez was employed as a housekeeper at the Costa Mesa Marriott hotel that is managed by Defendant Merritt Hospitality, LLC.[2]  Godinez purports to sue on behalf of more than 3,700 hourly employees working at 12 hotels and one restaurant operated by Merritt throughout California.[3]  Godinez alleges that Merritt committed various wage and hour violations, including those related to rest and meal breaks.[4]

Godinez filed this class and representative action in January 2020.[5] Merritt then removed this case to this Court under 28 U.S.C. § 1453(b) of the Class Action Fairness Act.[6]  In July 2020, Godinez amended her complaint, asserting claims on behalf of a class of non-exempt employees employed by Merritt in California (excluding employees who worked at the Warner Center Marriott hotel and the Hilton Santa Cruz hotel covered by two other class actions).  Specifically, Godinez asserts the following nine claims for relief:

---

[1]    Pl.'s Mot. for Preliminary Approval of Class Action Settlement (the "Motion") [ECF No. 45].

[2]    First Am. Compl. (the "Amended Complaint") [ECF No. 11] ¶¶ 12 & 17.

[3]    Rule 26(f) Joint Report (the "Joint Report") [ECF No. 20] 3:3-5.

[4]    Amended Complaint ¶¶ 19-25.  The Court restates the allegations in the Complaint for context but makes no determination regarding their veracity.

[5]    *See generally* Notice of Removal (the "Removal Notice") [ECF No. 5], Ex. A (the "Complaint").

[6]    Removal Notice ¶ 6.

1    • failure to provide minimum wages;

2    • failure to provide overtime wages;

3    • failure to provide meal breaks;

4    • failure to provide rest periods;

5    • failure to pay wages upon termination;

6    • failure to provide accurate wage statements;

7    • failure to reimburse for all necessary expenses;

8    • unlawful business practices; and

9    • civil penalties under the Private Attorneys General Act ("PAGA").[7]

10    Discovery began in September 2020.[8]  After several months, the parties

11    reached an impasse.  Godinez filed two separate discovery motions, which this

12    Court granted in part in March 2021.[9]  Merritt subsequently produced a sample

13    of time and pay data in June 2021.[10]  After analyzing the data, the parties

14    scheduled a mediation with mediator Mark Rudy.[11]  The parties conducted a

15    day-long mediation in September 2021, during which Mr. Rudy made a

16    settlement proposal for the parties' consideration.  A few weeks later, the parties

17    settled this case, subject to this Court's approval.[12]

18    Godinez filed the instant Motion on behalf of herself and a class of

19    similarly situated persons in December 2021.[13]  Four days later, Merritt filed a

20    notice of non-opposition to the instant Motion.[14]

21

22    [7]    Amended Complaint ¶¶ 31-94.

23    [8]    Motion 3:26.

24    [9]    *See generally* Min. Order Granting in Part and Denying in Part Pl.'s Mots. to Compel Discovery [ECF No. 37].

25    [10]    Motion 4:8-11.

26    [11]    *Id.* at 4:12-16.

27    [12]    *Id.*

27    [13]    *See generally id.*

28    [14]    Notice of Non-Opposition to the Motion [ECF No. 48].

**B.    Summary of Proposed Settlement**

Set forth below is a summary of the proposed settlement agreement.[15]

**1.    Settlement Class**

The proposed settlement class is all current and former non-exempt employees of Merritt in California at any time from January 29, 2016, through November 2, 2021, excluding employees who were employed by Merritt at the Warner Center Marriott hotel and the Hilton Santa Cruz/Scotts Valley hotel ("Class Members").[16]  Godinez's attorneys ("Class Counsel") estimate the class to include 3,290 Class Members.[17]

**2.    Settlement Amount**

Pursuant to the Settlement Agreement, Merritt will pay up to a maximum of $1.75 million into a common fund.[18]  That sum does not include the employer's share of payroll taxes.[19]  Of the $1.75 million, $75,000 will be allocated to settle the PAGA claim, with $56,250 to be distributed to the California Labor Workforce Development Agency.[20]  The settlement agreement also allocates up to $20,000 for litigation costs, subject to this Court's approval.[21]  After costs, expenses, and proposed awards to the attorneys and class representative, Class Counsel estimate that $1,041,666.67 will be left, with a payment of $316.61 available for each Class Member.

---

[15]    *See generally* Decl. of Armond M. Jackson in Supp. of the Motion (the "Jackson Declaration") [ECF No. 45-1], Ex. A (Stipulation for Class Action Settlement (the "Settlement Agreement")).

[16]    *Id.* at ¶¶ 6 & 8.

[17]    Jackson Declaration ¶ 9.

[18]    Settlement Agreement ¶ 21.

[19]    *Id.* at ¶ 14.

[20]    *Id.* at ¶¶ 26-28 & 50.d.

[21]    *Id.* at ¶ 50.c.

### 3.    Settlement Administration and Notice Plan

The parties have selected Phoenix Settlement Administrators to serve as the Settlement Administrator.[22]  The Settlement Administrator plans to mail notices to all Class Members to their last-known addresses.[23]  Those notices will describe the litigation, the settlement's terms, and options for Class Members to participate in the settlement, to object to the settlement, or to do nothing.[24]  The anticipated administration costs are not to exceed $25,000.[25]

### 4.    Opt-Out and Objection Process

Any member of the proposed settlement class who does not wish to participate in the proposed settlement must submit a valid and timely "Request for Exclusion."[26]  Requests for Exclusion must be submitted within 45 days after the Settlement Administrator mails the notice packets to the putative Class Members.[27]  No later than 10 days after that deadline, the Settlement Administrator shall provide counsel for the parties a complete list of all Class Members who submitted a timely and valid Request for Exclusion.[28]

Similarly, any objection to the Settlement Agreement must be made within 45 days after the Settlement Administrator mails the notice packets.[29] Objections must state the full name of the Class Member, must bear that Class Members' signature, and must articulate the grounds for objection.[30]  "Class Members who do not submit a Notice of Objection or appear at the Final

---

[22]    *Id.* at ¶ 38.

[23]    *Id.* at ¶¶ 5 & 7.

[24]    Jackson Declaration, Ex. B (Notice of Class Action Settlement (the "Class Notice")) 2.

[25]    Settlement Agreement ¶ 50.e.

[26]    *Id.* at ¶¶ 29 & 34.

[27]    *Id.* at ¶ 35.

[28]    *Id.* at ¶ 49.b.

[29]    *Id.* at ¶ 35.

[30]    *Id.* at ¶ 49.c.

Approval Hearing to explain their objection(s) shall be deemed to have waived any objections and shall be foreclosed from making any objections (whether by appeal or otherwise) to the Settlement."[31]

**5.    Release**

The Settlement Agreement defines the Released Parties as the "Defendant, Owners, and their respective present or former parents, owners, subsidiaries, and any affiliated or related persons or entities and each of their respective officers, directors, employees, partners, shareholders, members, attorneys, agents, and any other predecessors, successors, assigns, or legal representatives."[32]  In exchange for the settlement consideration, all participating members of the proposed settlement class will agree have released the Released Parties from:

> any and all claims, demands, rights, liabilities, and/or causes of action that were pleaded or could have been pleaded based upon the factual allegations set forth in the operative first amended complaint filed in this Action and arising at any time during the Class Period, including claims for (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide meal periods or pay the one hour premium; (4) failure to provide rest periods or pay the one hour premium; (5) failure to timely pay all wages due during employment and upon termination; (6) failure to furnish accurate itemized wage statements and maintain records; (7) failure to indemnify employees for necessary expenditures; and (8) unfair and unlawful business practices.[33]

---

[31] *Id.*

[32] *Id.* at ¶ 33.

[33] *Id.* at ¶ 48.a.

**6.    Class Counsel Fees and Expenses and Plaintiff's Service Award**

Class Counsel seek an award of attorneys' fees "in an amount not to exceed one-third (1/3) of the Maximum Settlement Amount," which would amount to $583,333.33.[34]  Class Counsel also request $5,000 as an incentive payment for Karla Godinez as the named class representative.[35]

### III. DISCUSSION

**A.    Preliminary Approval of the Settlement Agreement**

**1.    Legal Standard**

"The claims, issues, or defenses of . . . a class proposed to be certified for purposes of settlement" may be settled "only with the court's approval." Fed. R. Civ. P. 23(e).  "The primary concern of [Rule 23(e)] is the protection of th[e] Class Members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982).  The decision to approve a class action settlement is "committed to the sound discretion of the trial judge," *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992), who must examine the settlement to determine if it is "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e)(2).

In determining whether a class settlement is "fair, reasonable, and adequate," a district court must consider the following factors:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

---

[34]    *Id*. at ¶ 50.c.

[35]    Motion 11:23-24.

1           (ii) the effectiveness of any proposed method of distributing

2           relief to the class, including the method of processing class-

3           member claims;

4           (iii) the terms of any proposed award of attorneys' fees,

5           including timing of payment; and

6           (iv) any agreement required to be identified under

7           Rule 23(e)(3); and

8        (D) the proposal treats Class Members equitably relative to each

9        other.

10 Fed. R. Civ. P. 23(e)(2).  The goal of Rule 23(e)(2), as amended in 2018, "is . . .

11 to focus the [district] court and the lawyers on the core concerns of procedure

12 and substance that should guide the decision whether to approve the proposal."

13 Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes.  A court must review the

14 entire settlement agreement, as a whole, for overall fairness.  *See Staton v. Boeing*

15 *Co.*, 327 F.3d 938, 960 (9th Cir. 2003).

16        **2.**     **Adequacy of Representation by Class Representatives and**

17            **Class Counsel**

18        Under Rule 23(e)(2)(A), the first factor to be considered is whether the

19 class representative and class counsel have adequately represented the class.

20 This analysis includes, for example, "the nature and amount of discovery"

21 undertaken in the litigation, or "the actual outcomes of other cases."

22 Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Comm. Notes.

23        In this case, Class Counsel claim to have more than a decade of

24 experience with wage and hour litigation.[36]  Class Counsel also describe the

25 amount of discovery as "significant."[37]  However, it appears that Class Counsel

26

---

27 [36]    *See, e.g.*, *id*. at 10:27-28; Jackson Declaration ¶¶ 24 & 25 (collecting cases).

28 [37]    Motion 10:18.

reviewed only a sample of the full pay and hour data—about 20% of the 3,290 member class[38]—which they rhetorically try to inflate by referring to the "thousands of time data excel cells" that they received.[39]  A back-of-the-envelope calculation reveals that Class Counsel reviewed data for only about 658 workers.[40]  Absent further specific evidence of discovery taken,[41] the Court has concerns about the degree to which the parties were informed about the true nature of alleged wage and hour violations.  Nothing in the record suggests that the 20% sample was verified as statistically representative.[42]  Worryingly for the Class Members, the sample could understate the extent, severity, and frequency of wage and hour violations.

While the experience of counsel here does mitigate the Court's concerns regarding the limited amount of discovery that was performed, this factor weighs against preliminary approval.

### 3.    Negotiated at Arm's Length

Next, the Court considers whether the proposed settlement was negotiated at arm's length.  *See* Fed. R. Civ. P. 23(e)(2)(B).  As with the preceding factor, this factor can be "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement."  Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes.  "[T]he involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether th[ose] [negotiations] were

---

[38]    Jackson Declaration ¶ 6.

[39]    *See id.* at ¶ 9.  The number of cells in the spreadsheet is a meaningless metric.  It is akin to using the number of words or letters that one reads in a book as a proxy for what one has learned.

[40]    The Court calculated that figure by taking 20% of 3,290 supposed Class Members.

[41]    The Jackson Declaration is slightly ambiguous regarding whether multiple samples of data were received and reviewed, or merely the one 20% sample. *Compare* Jackson Declaration ¶ 6 *with id.* at ¶ 9.

[42]    *See generally id.*; Motion.

1  conducted in a manner that would protect and further the class interests."

2  Fed. R. Civ. P. 23(e)(2)(B), 2018 Advisory Committee Notes.

3    Here, the parties engaged in a full day mediation with Mr. Rudy, who is

4  described as an "experienced" and "premier wage and hour class action

5  mediator."[43]  Mr. Rudy proposed a settlement, which the parties formally

6  accepted several weeks later.[44]  Mr. Rudy's participation in the mediation gives

7  the Court confidence that the parties negotiated at arm's length.  This factor

8  therefore weighs in favor of preliminary approval.

9    **4.    Adequacy of Relief Provided for the Class**

10    The third factor is whether "the relief provided for the class is adequate,

11  taking into account:  (i) the costs, risks, and delay of trial and appeal; (ii) the

12  effectiveness of any proposed method of distributing relief to the class, including

13  the method of processing class-member claims; (iii) the terms of any proposed

14  award of attorneys' fees, including timing of payment; and (iv) any agreement

15  required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).

16  Under this factor, the relief "to Class Members is a central concern."

17  Fed. R. Civ. P. 23(e)(2)(C), 2018 Advisory Comm. Notes.

18    **a.    Costs, Risks, and Delay**

19    "A[] central concern [when evaluating a proposed class action settlement]

20  . . . relate[s] to the cost and risk involved in pursuing a litigated outcome."

21  Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes.  In this regard, the test of

22  a settlement is not the maximum amount that the plaintiffs might have

23  recovered, but, rather, whether the settlement is within a reasonable range.  *See*

24  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965–66 (9th Cir. 2009)

25  ("district judges naturally arrive at a reasonable range for settlement by

26

27  ---

[43]    Jackson Declaration ¶¶ 5, 7, & 10.

28  [44]    *Id.* at ¶ 10.

-10-

considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value").

During the negotiations that resulted in the Settlement Agreement, Class Counsel considered the uncertainty and hurdles of litigation if the lawsuit were to proceed, including prevailing on certification, trial, and any appeal.[45] Additionally, the risk of delay is amplified in view of the uncertainties around COVID-19, which could jeopardize the ability of hospitality businesses like Merritt to pay any disbursement.[46]  Given the relatively early stage of the litigation and lack of significant motion practice,[47] the Court acknowledges that numerous hurdles remain, if this lawsuit proceeds.[48]

On the other hand, the total settlement amount is relatively small in view of what Class Counsel represent to be a "realistic evaluation of Plaintiff's claims."[49]  Going claim by claim, the Court tallies a total of $10,206,601.27 as a realistically obtainable sum for all of the claims, including the PAGA claim.[50]  A settlement of $1.75 million, although large on its face, is barely 17% of what the Class Members could potentially recover.[51]  Once costs and expenses are factored in, the amount is closer to 10%—a significant discount.  Alternatively, if Class Counsel were to capture the full value of Godinez's claims, then the class could have a net settlement of closer to $6 million, or about $1,700 per class member—a sizeable upgrade from the current figure of $316.62 per class

---

[45]    Motion 7:3-8.

[46]    *Id*. at 6:8-13.

[47]    For example, Merritt has not moved to dismiss, nor has any party moved for full or partial summary judgment.

[48]    Motion 6:14-27.

[49]    *Id*. at 7:9.

[50]    *See id*. at 7:10-8:18 (adding all of the figures listed therein).

[51]    The Court calculated that figure by dividing $1,750,000.00 by $10,206,601.27.

1  member.[52]  Thus, the Court finds that the settlement amount of $1.75 million

2  may not be adequate, despite the uncertainties that favor settlement.  On

3  balance, this factor weighs slightly against preliminary approval.

4           **b.    Effectiveness of Method of Distributing Relief**

5           The Court must also consider "the effectiveness of any proposed method

6  of distributing relief to the class, including the method of processing class-

7  member claims."  Fed. R. Civ. P. 23(e)(2)(C).  "Often it will be important for

8  the court to scrutinize the method of claims processing to ensure that it

9  facilitates filing legitimate claims."  Fed. R. Civ. P. 23(e), 2018 Advisory Comm.

10  Notes.  "A claims processing method should deter or defeat unjustified claims,

11  but the court should be alert to whether the claims process is unduly

12  demanding."  *Id.*

13          Payment will be made to all participating Class Members who do not

14  otherwise timely opt out, as explained in the notice.[53]  Because Class Members

15  do not have to take any affirmative, proactive steps to receive the cash payment,

16  the Court finds the method of distributing relief to be adequate.  This factor

17  weighs in favor of preliminary approval.

18          **c.    Proposed Award of Attorneys' Fees**

19          "At the preliminary approval stage, the Court need not make its final

20  decision regarding the reasonableness of attorneys' fees and costs, but need only

21  determine that the requested fees and costs are not the products of apparent

22  collusion."  *Hollis v. Union Pac. R.R. Co.*, 2018 WL 6273014, at *6 (C.D. Cal.

23

24  [52]    The Court modeled this result with the following assumptions:
25  (1) attorneys' fees would be one-third the total fund ($3,402,200.40); (2) the
    litigation costs would be quintupled (from $20,000.00 to $100,000.00);
26  (3) Class Counsel's PAGA claim estimate can be taken at face value
    ($863,009.50); and (4) the service award and class administration costs would
    be kept constant at current proposed level ($5,000.00 and $25,000.00,
27  respectively), as those figures need not vary with dollar size of the common
    fund.
28  [53]    Class Notice 1 & 4.

1  Mar. 6, 2018).  The Ninth Circuit has set 25% as a benchmark for a reasonable
2  fee award.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th
3  Cir. 2015).  Class Counsel disturbingly assert that "Th [*sic*] Ninth Circuit's
4  benchmark for fees is 33.33 percent of the gross settlement amount," citing
5  *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *14 (N.D. Cal. Jan. 26, 2007),
6  *aff'd*, 331 F. App'x 452 (9th Cir. 2009).[54]  But at that pin cite, the *Glass* Court
7  wrote that "[t]he Ninth Circuit has repeatedly held that 25% of the gross
8  settlement amount is the benchmark for attorneys' fees."  *Id*.

9      Such a misquote may not be cause for alarm, except for the fact that Class
10  Counsel's proposed fee award would constitute, in and of itself, one-third of the
11  total fund.  Specifically, Class Counsel have indicated that they intend to seek a
12  service award for Godinez of $5,000, reimbursement not to exceed $20,000 for
13  litigation costs, and an award of attorneys' fees in the amount of $583,333.33.[55]
14  When other costs are included, the net settlement amount available for Class
15  Members is only about 60% of the common fund.[56]

16      Superficially, the Court does not observe any evidently collusive behavior.
17  *Cf. Kemp v. Low Cost Interlock, Inc.*, 2020 WL 4561669, at *8 (C.D. Cal. Apr. 8,
18  2020) (where class counsel did not specify a figure for attorneys' fees, but
19  asserted it could range as high as an amount greater than the amount available
20  for the class).  But, in view of the relative early stage of settlement, speed of
21  resolution, and lack of motion practice, the requested fees are "potentially too
22  high and may need to be adjusted" before the Court approves the Settlement
23  Agreement.  *Hollis*, 2018 WL 6273014, at *6.  Additionally, as Class Counsel
24  acknowledge, they will need to submit "a breakdown of hours worked and fees

25

26  [54]    Motion 12:23-25.

27  [55]    *Id*. at 4:25-5:2.

28  [56]    The Court calculates that figure by dividing the net settlement amount of
$1,041,666.67 by the maximum common fund amount of $1,750,000.00.

incurred for a lodestar cross-check" before the Court can approve any award of attorneys' fees.[57] *See also In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (describing the two primary methods to calculate attorneys' fees:  the lodestar method and the percentage-of-recovery method).  Such transparency is important when, as here, the attorneys' fees are not "separate and apart" from the settlement fund.  *Kemp*, 2020 WL 4561669, at *7; *see also Staton*, 327 F.3d at 964 (explaining that a defendant is normally only interested in disposing of the total claim, creating a perverse incentive for the defendant to pay more to class counsel and less to class members so long as it minimizes total outlays).  Therefore, this factor does not preclude preliminary approval, but neither does it weigh in favor.

### d.    Agreement Identification Requirement

The Court must also evaluate any agreement made in connection with the proposed Settlement.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iv) & (e)(3).  Here, the Settlement Agreement presently before the Court is the only agreement.  Thus, the Court need not evaluate any additional agreements outside of the Settlement Agreement.

Based upon the foregoing, the Court finds that this factor weighs in favor of preliminary approval of the Settlement Agreement.

### 5.    Equitable Treatment of Class Members

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats Class Members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).  "Matters of concern could include whether the apportionment of relief among Class Members takes appropriate account of differences among their claims, and whether the scope of the release may affect

---

[57]    Motion 13:28.

Class Members in different ways that bear on the apportionment of relief."
Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Comm. Notes.

Here, the payment to the Class Members will vary based upon the number of weeks that each Class Member worked for Merritt.[58]  This approach may unfairly treat Class Members who experienced unusually high amounts of wage and hour violations, especially if those violations occurred in a short span of time.  In other words, Class Counsel's proposed approach assumes that wage and hour violations occurred evenly and predictably each workweek over the course of the class period, which runs from January 29, 2016, to November 2, 2021.[59]  But it is not difficult to imagine that some workers may have worked those 300 (or so) workweeks with only minor incident, while others may have had shorter stints with more extreme grievances—perhaps even precipitated by them.  Assuming that Merritt has the time and pay data for the 3,290 class members, it should be possible to make more granular calculations for a number of Godinez's and the Class Members' claims.  Such an approach would be considerably more fair.  It would afford more relief to those who have suffered the greatest, while preventing a windfall for those who have suffered the least.  Accordingly, this factor also weighs against preliminary approval.

### 6.    PAGA Claim:  The California Labor and Workforce Development Agency

Under the California Labor Code, the "court shall review and approve any settlement of any civil action filed" under PAGA.  *See* Cal. Lab. Code § 2699(*l*)(2).  Although some ambiguity exists regarding the standard to evaluate the fairness of a proposed PAGA settlement, *see Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F. Supp. 3d 1074, 1076-77 (C.D. Cal. 2017), courts in

---

[58]    *Id.* at 13:9-14.

[59]    Settlement Agreement ¶ 8.

this District have narrowed the question to whether the proposed settlement "would support PAGA's interest in augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance." *Gibson v. Swift Transportation Co. of Arizona, LLC*, 2021 WL 5069585, at *3 (C.D. Cal. May 20, 2021) (citing *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1135 (N.D. Cal. 2016)).

Overall, the Court finds that a PAGA award of $75,000.00, or 4% of the common fund—to be delivered to the California Labor and Workforce Development Agency—is likely fair and reasonable in view of similar cases. *See, e.g.*, *Boyd v. Bank of Am. Corp.*, 2014 WL 6473804, at *8 (C.D. Cal. Nov. 18, 2014) (awarding $18,750, or 0.32%, from a $5,800,000 common fund). Although a higher amount could further augment the state's enforcement capabilities, the Court observes that there would be no limit under that line of reasoning. Accordingly, the Court finds the PAGA claim worthy of preliminary approval.

### 7. *Cy Pres* Beneficiary

"A *cy pres* award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members and must not benefit a group too remote from the plaintiff class." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (citations omitted). Here, the *cy pres* beneficiary is the State Controller's Office Unclaimed Property Fund.[60] According to the Settlement Agreement, any settlement payment checks that remain "uncashed after one hundred eighty (180) days from issuance" will be distributed by the Settlement Administrator to the State Controller.[61] The Court finds this *cy pres* beneficiary adequate in view of California's law of escheatment, as other courts have done.

---

[60] Motion 14:13-15.

[61] Settlement Agreement ¶ 50.a.iv.

*See, e.g.*, *Roe v. Jose Torres L.D. Latin Club Bar, Inc.*, 2020 WL 5074392, at *10
(N.D. Cal. Aug. 27, 2020); *accord Acosta v. Frito-Lay, Inc.*, 2018 WL 2088278, at
*8 (N.D. Cal. May 4, 2018).

### 8.    Conclusion

The Court has concerns regarding the total settlement amount, the size of
the attorneys' fees, the amount of discovery, and the equitable treatment of class
members.  After weighing the preceding factors, the Court will not grant
preliminary settlement approval at this time.  Revisions to the calculation of
damages, the size and independence of the attorneys' fees, or the amount
available to the Class Members may assuage the Court's concerns.

### B.    Preliminary Certification of the Proposed Settlement Class

In addition to moving for preliminary approval of the settlement
agreement, Godinez also moves for an order conditionally certifying the
settlement class.[62]  As the proponent of class certification, the plaintiff bears the
burden of demonstrating that all four prerequisites of Rule 23(a) have been met.
*See O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 318 (C.D. Cal. 1998).  Here,
the Court finds that Godinez has not met her burden to show that the proposed
settlement class should be preliminarily certified.

### 1.    Legal Standard

One prerequisite for directing notice of the proposed settlement to the
class is a determination that "the court will likely be able to [] certify the class
for purposes of judgment[.]" Fed. R. Civ. P. 23(e)(1)(B)(ii); *see also Ochinero v.
Ladera Lending, Inc.*, 2021 WL 2295519, at *9 (C.D. Cal. Feb. 26, 2021).  "The
class action is 'an exception to the usual rule that litigation is conducted by and
on behalf of the individual named parties only.'"  *Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01

---

[62]    Pl.'s Re-Notice of Motion [ECF No. 49] 2.

1  (1979)).  "Rule 23(a) ensures that the named plaintiffs are appropriate

2  representatives of the class whose claims they wish to litigate."  *Id.* at 349.

3      Rule 23(a) imposes the following prerequisites on class actions:  (1) the

4  class is so numerous that a joinder of all members is impracticable (numerosity);

5  (2) there are questions of law or fact common to the class (commonality); (3) the

6  claims or defenses of the representative parties are typical of the claims or

7  defenses of the class (typicality); and (4) the representative parties will fairly and

8  adequately protect the interests of the class (adequacy).  Fed. R. Civ. P. 23(a).

9      In addition, Rule 23(b) requires at least one of the following to be true for

10  a class action to be maintained:

11      (1) prosecuting separate actions by or against individual Class

12      Members would create a risk of:

13          (A) inconsistent or varying adjudications with respect to

14          individual Class Members that would establish incompatible

15          standards of conduct for the party opposing the class; or

16          (B) adjudications with respect to individual Class Members

17          that, as a practical matter, would be dispositive of the interests

18          of the other members not parties to the individual

19          adjudications or would substantially impair or impede their

20          ability to protect their interests;

21      (2) the party opposing the class has acted or refused to act on

22      grounds that apply generally to the class, so that final injunctive relief

23      or corresponding declaratory relief is appropriate respecting the

24      class as a whole; or

25      (3) the court finds that the questions of law or fact common to Class

26      Members predominate over any questions affecting only individual

27      members, and that a class action is superior to other available

28

-18-

1  methods for fairly and efficiently adjudicating the controversy. The

2  matters pertinent to these findings include:

3        (A) the Class Members' interests in individually controlling

4            the prosecution or defense of separate actions;

5        (B) the extent and nature of any litigation concerning the

6            controversy already begun by or against Class Members;

7        (C) the desirability or undesirability of concentrating the

8            litigation of the claims in the particular forum; and

9        (D) the likely difficulties in managing a class action.

10  Fed. R. Civ. P. 23(b).  With respect to Rule 23(b)(3), what matters is not merely

11  "the raising of common 'questions,'" "but rather, the capacity of a class-wide

12  proceeding to generate common answers apt to drive the resolution of the

13  litigation." *Dukes*, 564 U.S. at 350.

14      **2.    Rule 23(a) Requirements**

15          **a.    Numerosity**

16      The numerosity prerequisite "requires examination of the specific facts of

17  each case and imposes no absolute limitations."  *Gen. Tel. Co. of the Nw. v. Equal*

18  *Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980).  The numerosity

19  requirement is met here because the proposed class includes approximately

20  3,290 employees who worked for Merritt.[63]

21          **b.    Commonality**

22      "[C]ommonality requires that the Class Members' claims 'depend upon a

23  common contention' such that 'determination of its truth or falsity will resolve

24  an issue that is central to the validity of each claim in one stroke.'"  *Abdullah v.*

25  *U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Dukes*, 564 U.S.

26

27

28  ---

    [63]    Motion 3:2.

-19-

at 350).  Commonality is not necessarily apparent here.[64]  Despite discussing it in their Rule 26(f) Report, the matter is not briefed in the Motion.[65]  The Court will not do Class Counsel's homework for them; the Court finds that, on this record, the commonality requirement is not met.

### c.    Typicality

"To demonstrate typicality, Plaintiffs must show that the named parties' claims are typical of the class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(a)(3)).  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other Class Members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).  The Rule 23(a) standard is "permissive," and it requires only that the representative's claims are "'reasonably co-extensive with those of absent Class Members.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citation omitted).

Class Counsel say that Godinez's claims are typical for those of a non-exempt employee.[66]  But beyond that naked assertion, Class Counsel give little explanation why or how.  At most, Godinez testifies that she was "not able to take [her] entitled meal breaks" after working for five or 10 hours at a time.[67]  But that issue is the only grievance that Godinez mentions in her declaration that overlaps with one of the nine claims that she asserts against Merritt.  The

---

[64]    *See, e.g.*, Joint Report 3:19-27 (where Merritt maintained that its policies and practices were "facially compliant," so resolution of the Class Members' claims would require thousands of "mini trials").

[65]    *See generally* Motion.

[66]    *Id*. at 9:3-5.

[67]    Decl. of Named Pl. Karla Godinez in Supp. of the Motion [ECF No. 45-2] ¶ 4.

1    lack of discussion and briefing here leaves the Court wanting.  Therefore, the
2    Court finds that Godinez has not sufficiently demonstrated that her claims are
3    typical of the class.

4    **d.    Adequacy**

5    Rule 23(a)(4) requires that the class representative "fairly and adequately
6    protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Representation is
7    "adequate" where counsel for the class is qualified and competent, the
8    representatives' interests are not antagonistic to the interests of absent class
9    members, and it is unlikely that the action is collusive.  *O'Connor*, 184 F.R.D. at
10   335 (citing *In re N. Dist. of California, Dalkon Shield IUD Prod. Liab. Litig.*, 693
11   F.2d 847, 855 (9th Cir.), *as amended* (July 15, 1982)).

12   As discussed previously, the Court finds that Class Counsel appear
13   experienced in this realm of the law, notwithstanding the procedural missteps
14   discussed herein.  The Court has also no reason to believe Godinez's interests
15   are not aligned with the broader class, although further exposition in any
16   subsequent briefing could be useful.

17   Last, while the Court has concerns about inequitable results for the Class
18   Members and the size of the attorneys' fees, the Court does not have any
19   manifest evidence of collusion.  Therefore, this requirement is preliminarily
20   satisfied.

21   **3.    Rule 23(b) Requirement**

22   The proposed class must also meet one of the elements listed in
23   Rule 23(b).  Because the Court finds that the proposed class does satisfy all of
24   the prerequisites under Rule 23(a), it does not undertake that analysis here.

25   **C.    Notice Requirements Under Rule 23(c)(2)(B)**

26   "For any class certified under Rule 23(b)(3)—or upon ordering notice
27   under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement
28   under Rule 23(b)(3)—the court must direct to Class Members the best notice

-21-

that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

Fed. R. Civ. P. 23(c)(2)(B). Such notice must clearly state the following:

> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citation and quotation omitted).

Although Class Counsel fall short of meeting their burden to certify the class, the Court finds that the proposed Class Notice satisfies the notice requirements. The Class Notice describes the allegations and claims in plain language,[68] defines the class upfront,[69] and describes the time and manner for requesting an exclusion.[70] The notice informs Class Members in boldface type that, if they do not exclude themselves from the settlement, they will be bound by the release of the claims.[71] The notice also describes the options available to

---

[68]    Class Notice 2.

[69]    *Id.* at 1.

[70]    *Id.* at 1 & 4.

[71]    *Id.* at 1.

Class Members, such opting out and filing an objection, which includes the key statements that they may hire an attorney and make an appearance in this case.[72]

Last, the Court appreciates that the Class Notice includes information about participation in the final settlement hearing via Zoom, especially in view of ongoing challenges concerning COVID-19.[73]  Accordingly, the notice requirements under Rule 23(c)(2)(B) have been met.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.    The instant Motion for Preliminary Approval is **DENIED without prejudice**.  The Court encourages the parties to move again for preliminary approval of the Settlement Agreement and preliminary certification of the class with additional information, potential revisions to the attorneys' fees request and method for calculating damages, and sufficient briefing to overcome the deficiencies in the instant Motion regarding certification.

2.    The parties are **DIRECTED** to confer forthwith in view of the substance of this Order.

3.    The parties are also **DIRECTED** to file no later than November 4, 2022, a Joint Status Report that provides the Court with their respective views on the case schedule and other issues relating to resolution.

4.    A video Status Conference is **SET** for November 18, 2022, at 11:00 a.m.

**IT IS SO ORDERED.**

Dated: October 12, 2022

_____
John W. Holcomb
UNITED STATES DISTRICT JUDGE

---

[72]    *Id.* at 1 & 4.
[73]    *Id.* at 5.