**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KARLA GODINEZ, individually and on behalf of others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>MERRITT HOSPITALITY, LLC, and DOES 1-50, inclusive,<br><br>    Defendants. | Case No. 8:20-cv-00941-JWH-KES<br><br>**ORDER REGARDING PLAINTIFF'S MOTION FOR CLASS ACTION SETTLEMENT APPROVAL [ECF No. 74] & PLAINTIFF'S MOTION FOR SETTLEMENT APPROVAL OF CLASS ACTION ATTORNEYS' FEES AND COSTS [ECF No. 75]** |

# I. SUMMARY OF DECISION

Before the Court are two unopposed motions filed by Plaintiff Karla Godinez, individually and on behalf of all others similarly situated, in this class action case.[1] Through the Motions, Godinez seeks the final approval of the class action settlement, an award of attorneys' fees, the reimbursement of attorneys' and administration costs, and a service award.[2] The Court conducted a hearing on the Motions in January 2024.[3] After considering those Motions, the arguments of counsel during the hearing, and the Supplemental Motion,[4] the Court orders that the Motions are **GRANTED** for the reasons set forth herein.

# II. FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

Godinez was employed as a housekeeper at the Costa Mesa Marriott hotel that is managed by Defendant Merritt Hospitality, LLC.[5] Godinez purports to sue on behalf of more than 3,700 hourly employees working at 12 hotels and one restaurant operated by Merritt throughout California.[6] Godinez alleges that Merritt committed various wage and hour violations, including those related to rest and meal breaks.[7]

Godinez filed this class action lawsuit in January 2020.[8] Merritt then removed this case to this Court under 28 U.S.C. § 1453(b) of the Class Action Fairness Act.[9] In July 2020, Godinez amended her complaint, asserting claims for relief on behalf of a class of non-exempt employees employed by Merritt in California (excluding employees who

---

[1]    Pl.'s Mot. for Settlement Approval of Class Action (the "Motion for Settlement Approval") [ECF No. 74-1]; Pl.'s Mot. for Settlement Approval of Class Action Attorneys' Fees & Costs Requests (the "Motion for Fees and Costs") [ECF No. 75] (jointly, the "Motions").

[2]    *See generally* Motions.

[3]    Mins. of Hr'g re: Motions (the "Hearing") [ECF No. 76]; *see also* Transcript of Hearing (the "Hearing Transcript") [ECF No. 77].

[4]    Joint Suppl. to Motions (the "Supplemental Motion") [ECF No. 79].

[5]    First Am. Compl. (the "Amended Complaint") [ECF No. 11] ¶¶ 12 & 17.

[6]    Rule 26(f) Joint Report (the "Joint Report") [ECF No. 20] 3:3-5.

[7]    Amended Complaint ¶¶ 19-25. The Court restates the allegations in the Complaint for context, but it makes no determination regarding their veracity.

[8]    *See generally* Notice of Removal (the "Removal Notice") [ECF No. 5], Ex. A (the "Complaint").

[9]    Removal Notice ¶ 6.

worked at the Warner Center Marriott hotel and the Hilton Santa Cruz hotel covered by
two other class actions).  Specifically, Godinez asserts the following nine claims for relief:

- failure to provide minimum wages;
- failure to provide overtime wages;
- failure to provide meal breaks;
- failure to provide rest periods;
- failure to pay wages upon termination;
- failure to provide accurate wage statements;
- failure to reimburse for all necessary expenses;
- unlawful business practices; and
- civil penalties under the Private Attorneys General Act ("PAGA").[10]

Discovery began in September 2020.[11]  After several months, the parties reached
an impasse.  Godinez filed two separate discovery motions, which this Court granted in
part in March 2021.[12]  In June 2021 Merritt produced a sample of time and pay data.[13]
After analyzing the data, the parties scheduled a mediation with mediator Mark Rudy.[14]
The parties conducted a day-long mediation in September 2021, during which Mr. Rudy
made a settlement proposal for the parties' consideration.  A few weeks later, the parties
settled this case, subject to this Court's approval.[15]

The parties moved for preliminary approval.[16]  In that First Motion for Preliminary
Settlement Approval, the parties estimated a total of 3,290 class members with 248,909
workweeks.[17]  The estimated payout per class member was $316.61.[18]  The Court denied

---

[10]    Amended Complaint ¶¶ 31-94.

[11]    Pl.'s Mot. for Preliminary Approval of Class Action Settlement (the "First Motion for
Preliminary Settlement Approval") [ECF No. 45] 3:26.

[12]    *See generally* Min. Order Granting in Part and Denying in Part Pl.'s Mots. to Compel
Discovery [ECF No. 37].

[13]    First Motion for Preliminary Settlement Approval 4:8-11.

[14]    *Id.* at 4:12-16.

[15]    *Id.*

[16]    *See generally id.*

[17]    *Id.* at 10:13 & 4:9.

[18]    *Id.* at 5:10.

that First Motion for Preliminary Settlement Approval,[19] expressing concern and seeking
more information with respect to the following issues:

>   (1) the 20% random sampling of time and pay data;
>   (2) the settlement resulting in 17% of the Plaintiff's analysis of Defendant's
>   potential exposure;
>   (3) the attorney fee request of 33% which is more than the 25% federal court
>   benchmark for class actions;
>   (4) the workweek settlement distribution formula during the class period;
>   and
>   (5) further evidence or explanation to satisfy the class certification
>   requirements under Fed. R. Civ. P. 23.[20]

The Court also specifically noted that "the total settlement amount is relatively small,"
particularly the "$316.6[1] per class member."[21]

The parties subsequently renewed their motion for preliminary approval,
addressing the Court's concerns by providing additional data and reducing the requested
attorneys' fees from 1/3 of the Settlement Award to 25%.[22]  In the renewed motion, the
estimated payment per class member was $360.94.[23]  The Court conducted a hearing on
the second motion,[24] and subsequently approved it.[25]  That approval was based upon an
estimated 3,290 class members.[26]

Godinez filed the instant Motions in December 2023.[27]  In January 2024, the Court
heard oral argument with respect to the Motions and ordered supplemental briefing.[28]

---

[19]     Order on First Motion for Preliminary Settlement Approval (the "Order Denying
Preliminary Approval") [ECF No. 52].

[20]     Pl.'s Mot. for Preliminary Approval of Class Action Settlement (the "Second Motion for
Preliminary Settlement Approval") [ECF No. 59] 2:21-27.

[21]     Order Denying Preliminary Approval 11:11-12:1.

[22]     *See generally* Second Motion for Preliminary Settlement Approval.

[23]     *Id.* at 3:23.

[24]     *See* Minute Order of Hearing re: Second Motion for Preliminary Settlement Approval
[ECF No. 68].

[25]     Order Granting Second Motion for Preliminary Settlement Approval (the "Order
Granting Preliminary Approval") [ECF No. 71].

[26]     *See id.* at 4.

[27]     *See generally* Motions.

[28]     Hearing; *see also* Hearing Transcript.

Godinez filed her Supplemental Motion, and the Court took the Motions under submission.[29]

## III.  FINAL APPROVAL OF THE SETTLEMENT AGREEMENT

### A.    Overview of the Proposed Settlement Agreement

With her instant Motions, Godinez seeks final approval of the following settlement agreement:

1)    A Settlement Class defined as: All current and former non-exempt employees of Defendant Merritt Hospitality, LLC in California at any time during the period from January 29, 2016, through November 2, 2021 (the "Class Period"), excluding employees who were employed by Defendant at the Warner Center Marriott and the Hilton Santa Cruz/Scotts Valley; and

2)    an all-inclusive and non-reversionary Gross Settlement Amount of $1.75 million (including employer payroll taxes).  The Gross Settlement Amount includes:

a)    a Remaining Distribution Fund which will be allocated to all Class Members on a pro-rata basis according to the number of weeks each Class Member worked during the Class Period.  The Remaining Distribution Fund will be paid to all Class Members who do not opt out of the Settlement Class, and without the need to submit claims for payment;

b)    attorneys' fees in the amount of $437,500, and litigation costs and expenses in the amount of $13,505.60, to Plaintiff's counsel, Jackson Law, APC;

c)    settlement administration costs in the amount of $25,000, to the Court-appointed settlement administrator, Phoenix Class Action Administration Solutions; and

d)    a class representative service award of $5,000 to Karla Godinez for her services on behalf of the Settlement Class.[30]

The $1.75 million Gross Settlement Amount equates to an average recovery of approximately $312.25 per Class Member.[31]

---

[29]    Supplemental Motion.

[30]    *See generally* Motions; Supplemental Motion.

[31]    Motion for Settlement Approval 2:21.

A Class Notice was circulated to Class Members, which "summarized the Settlement's principal terms, provided Class Members with an estimate of how much they would be paid if the Settlement received final approval, and advised Class Members about how to opt out of the Settlement and how to object."[32]  As of the time of the Hearing on the Motions, no Class Members had objected to the Settlement and only one Class Member opted out of the settlement Class.[33]

## B.    Hearing and Supplemental Briefing

The terms of the instant settlement agreement for which Godinez seeks final approval are the same as the terms she outlined in her Second Motion for Preliminary Settlement Approval, which the Court granted, ***with the following two exceptions***:

1)    the final number of class members and associated number of workweeks:  here, Godinez asserts 3,804 class members with 296,175 workweeks compared to an estimated 3,290 class members with 248,909 workweeks in the First and Second Motions for Preliminary Approval); and
2)    the final average payment per class member:  here, Godinez asserts an average payment of $312.25 per class member compared to an estimated payment of $316.61 in the First Motion for Preliminary Settlement Approval (which the Court denied as unreasonably low) and an estimated payment of $360.94 in the Second Motion for Preliminary Settlement Approval (which the Court preliminarily approved).[34]

The proposed Settlement Agreement was negotiated based upon an estimated 270,000 workweeks.[35]  It contains an "escalator clause":

In the event that the total number of workweeks exceeds that number by ten percent (10%) or more, the Maximum Settlement Amount shall be increased by one percent (1%) for every one percent (1%) increase in workweeks over the ten percent (10%) threshold.  This escalator clause provision shall only be triggered after the Parties exchange data regarding their respective positions.[36]

---

[32]    *Id.* at 5:18-21.

[33]    *Id.* at 6:3-4; *see also* Hearing Transcript 13:20-14:5.

[34]    *Compare* First & Second Motions for Preliminary Settlement Approval *with* Motions.

[35]    Decl. of Armond M. Jackson (the "First Jackson Declaration") [ECF No. 74-2], Ex. A (the "Settlement Agreement") ¶ 52.

[36]    *Id.*

Based upon the Court's calculations, the final number of workweeks (296,175) represents a 9.7% increase from the number used in negotiations (270,000), and an 18.9% increase from the number represented in the Second Motion for Preliminary Settlement Approval that the Court approved. Because the percentage increase from the number used in negotiations is just below 10%, the elevator clause does not apply.

During the hearing, the Court expressed concern about the lower payment per class member: the final average payment of $312.25 is substantially lower than the estimated $360.96 average payment that the Court preliminarily approved and is even lower than the estimated $316.61 average payment that the Court initially denied.[37] Counsel stated that they did not know why the final number of workweeks had increased to the extent that they did.[38] The parties suggested submitting joint supplemental briefing, which the Court ordered.[39] But the parties' Supplemental Motion largely reiterated the arguments set forth in the Motions.[40]

## C.    Legal Standard

The Federal Rules of Civil Procedure require court approval for class-action settlements. *See* Fed. R. Civ. P. 23(e). When the parties reach a settlement agreement before class certification, a district court uses a two-step process to approve a class-action settlement. *See Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). First, the court must certify the proposed settlement class. *See id.* Second, the court may finally approve a class action settlement "only after a hearing and on finding that the settlement . . . is fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2); *see also Staton*, 327 F.3d. at 952. The Rules instruct the Court to consider the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and

---

[37]    *See* Hearing Transcript 4:11-20.

[38]    *Id.* at 5:7-16.

[39]    *Id.* at 17:9-23:12.

[40]    *See generally* Supplemental Motion.

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Additionally, with respect to Rule 23(e)(2)(C)(iii), the Ninth Circuit directs district courts to undertake an additional search for more "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations," regardless of "whether a settlement agreement has been negotiated before a class has been certified or after." *Westfall v. Ball Metal Beverage Container Corp.*, 2021 WL 4206851, at \*4 (E.D. Cal. Sept. 16, 2021) (citing *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021)). The purpose of scrutinizing the fee arrangement is to look for "potential collusion or unfairness to the class." *Briseño*, 998 F.3d at 1026. The Ninth Circuit instructs district courts to analyze three factors: (1) whether counsel "receive[d] a disproportionate distribution of the settlement"; (2) whether the parties agreed to a "clear sailing arrangement"; and (3) whether the settlement includes a "kicker" or "reverter" clause. *Id.* at 1026-27.

In the Ninth Circuit, courts also consider the eight "*Churchill* factors":

(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021) (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011), which was citing *Churchill Vill. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)); *see also Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list").

Lastly, the district court must approve or reject the settlement as a whole. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The court may not delete, modify, or rewrite particular provisions of the settlement. *See id.* The court must remain cognizant that the settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

### D.    Analysis

#### 1.    Settlement Class Certification and Heightened Rule 23(e) Inquiry

This Court preliminarily certified the proposed settlement class in its prior order,[41] although formal class certification had not yet occurred.  Because the parties reached a settlement before formal class certification, this Court applies "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)" to its final approval.  *Saucillo v. Peck*, 25 F.4th 1118, 1130 (9th Cir. 2022).  Because the Court concludes that a "probing inquiry" of the Rule 23(e) criteria and the Ninth Circuit factors, as discussed below, favors approval, the Court certifies the settlement class for final approval of the settlement.  *See id.*

#### 2.    Rule 23(e)(2) Factors

##### a.    Adequacy of Representation by Class Representatives and Class Counsel

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representative and class counsel have adequately represented the class.  That analysis includes, for example, "the nature and amount of discovery" undertaken in the litigation, or "the actual outcomes of other cases."  Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Comm. Notes.

In this case, several aspects of the litigation suggest that this factor weighs in favor of approval.  First, Class Counsel—Armond Marced Jackson of Jackson Law, APC—has extensive experience with wage and hour class action litigation.[42]  Second, the parties reached settlement only after actively litigating this case for three years, through multiple motions to compel discovery and multiple motions for preliminary class action settlement approval, and the parties ultimately reached a settlement through mediation.[43]  The Court therefore finds that Godinez and Class Counsel have adequately represented the proposed settlement class, which weighs in favor of final approval of the settlement agreement.

##### b.    Arm's Length Negotiations

The Court must next consider whether the settlement agreement "was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  As with the preceding consideration, this

---

[41]    *See* Order Granting Preliminary Approval.

[42]    *See* First Jackson Declaration ¶¶ 17 & 18.

[43]    *See* Motion for Settlement Approval 3:16-21.

factor can be "described as [a] 'procedural' concern . . . looking to the conduct of the
litigation and of the negotiations leading up to the proposed settlement."
Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes.

Although the Court was not involved in the negotiations directly, mediator Mark
Rudy is highly regarded mediator who specializes in mediating employment and business-
related matters like this one.[44]  The parties attended a mediation before Mr. Rudy in
September 2021, and they ultimately accepted his mediator's proposal.[45]  The presence
and assistance of an experienced mediator in the settlement process strongly suggests
"that the settlement is non-collusive."  *Satchell v. Fed. Express Corp.*, 2007 WL 1114010,
at *4 (N.D. Cal. Apr. 13, 2007); *see also Pederson v. Airport Terminal Services*, 2018 WL
2138457, at *7 (C.D. Cal. April 5, 2018) (approving preliminary settlement when the
oversight "of an experienced mediator" reflected non-collusive negotiations); *Goodwin v.
Winn Mgmt. Grp. LLC*, 2017 WL 3173006, at *8 (E.D. Cal. July 26, 2017) (concluding
that that the settlement was the product of informed, arm's length negotiations by the
parties when settlement resulted from, among other things, a full day of mediation).  In
sum, because it appears that the parties negotiated at arm's length, this factor weighs in
favor of final approval.

### c.    Adequacy of Relief Provided for the Class

The third factor assesses whether "the relief provided for the class is adequate,
taking into account:  (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness
of any proposed method of distributing relief to the class, including the method of
processing class-member claims; (iii) the terms of any proposed award of attorneys' fees,
including timing of payment; and (iv) any agreement required to be identified under
Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).  Under this factor, the relief "to class
members is a central concern."  Fed. R. Civ. P. 23(e)(2)(C), 2018 Advisory Comm.
Notes.

### i.    Costs, Risks, and Delay of Further Litigation

"A[] central concern [when evaluating a proposed class action settlement] . . .
relate[s] to the cost and risk involved in pursuing a litigated outcome."
Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes.  In this regard, the test of a
settlement is not the maximum amount that the plaintiffs might have recovered, but,
rather, whether the settlement is within a reasonable range.  *See Rodriguez v. West
Publishing Corp.*, 563 F.3d 948, 965–66 (9th Cir. 2009) (noting that "district judges

---

[44]    *See* First Jackson Declaration ¶ 5; *see also* Mark S. Rudy, https://rezlaw.com/mark-rudy/.

[45]    *Id.*

naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value").

As Godinez notes, the parties reached the settlement after conducting an exhaustive analysis of the facts and evidence, including extensive discovery.[46] Additionally, the parties had not yet litigated any dispositive motions or class certification.[47] Continuing to litigate those issues would involve substantial risks related to class certification and trial and would likely last multiple years and create an enormous expense without any certainty that the class members would receive a remedy. Additionally, subsequent review by district courts could jeopardize any chance of recovery for the class, as the law continues to evolve. This Court therefore finds that the settlement amount of $1,750,000—out of Merritt's estimated $5,746,277.38 class exposure[48]—is adequate in view of the costs, risks, and delay of continued litigation.

### ii.    Effectiveness of the Method of Distributing Relief

The Court must next consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C). "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Comm. Notes. "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*

The Court finds that the method for distributing relief is adequate, as the funds will be distributed to the class members with no claim form requirement.[49] Thus, the Court finds that this factor weighs in favor of final approval.

### iii.    Proposed Award of Attorneys' Fees and the *Briseño* Flags

The third prong that the Court must consider when assessing the adequacy of the relief relates to "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(c). In considering the proposed award of attorneys'

---

[46]    Motion for Settlement Approval 14:24-15:19.

[47]    *See id.* at 9:19-10:23.

[48]    *See id.* at 9:7-18.

[49]    Settlement Agreement ¶ 50.a.

fees, the Court must be on watch for three "red flags" that tend to show collusion. *See Westfall*, 2021 WL 4206851, at *4.

The first flag is raised "when counsel receives a disproportionate distribution of the settlement[.]" *Kaupelis v. Harbor Freight Tools*, 2021 WL 4816833, at *10 (C.D. Cal. Aug. 11, 2021). Here, Class Counsel requests $437,500 in attorneys' fees—25% of the $1,750,000 Settlement Fund—and $13,505.60 in attorney expenses;[50] Class Counsel would thus net just under 26% of the Settlement Fund in total.

The Court finds that these fees are very reasonable. *See Westfall*, 2021 WL 4206851, at *5 ("While 33 percent is on the higher side, it is a far cry from the concerning 88 percent fee in *Briseño*."). Moreover, because the Court finds that the fees and expenses are not unreasonable on the whole, *see infra* Part IV.A. & B., this flag is not triggered. *Accord Ochinero v. Ladera Lending, Inc.*, 2021 WL 4460334, at *6 (C.D. Cal. July 19, 2021) (giving final approval for a settlement where the court found to be reasonable a request for attorneys' fees—equivalent to 33% of the settlement—and $20,000 in out-of-pocket expenses).

The second red flag is raised when the parties negotiate a "clear sailing arrangement," under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee. *See Kaupelis*, 2021 WL 4816833, at *10. "A clear sailing provision signals the potential that a defendant agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for the class members." *Briseño*, 998 F.3d at 1026–27. Although the instant Motion is unopposed, the settlement agreement has no clause explicitly requiring Merritt to refrain from challenging a fee request.[51] Additionally, the settlement agreement includes language making it binding on the parties, even if the Court declines the requested attorneys' fees.[52] Therefore, the second flag is not triggered.

Lastly, the third flag is raised when the agreement contains a "kicker" or "reverter" clause that "returns unawarded fees to the defendant, rather than the class." *Kaupelis*, 2021 WL 4816833, at *10. Here, there is no reverter clause.[53] Thus, the third flag is similarly not triggered, such that none of the *Briseño* flags is clearly raised.

---

[50]    *See generally* Motion for Fees and Costs.

[51]    *See* Settlement Agreement.

[52]    *Id.*

[53]    *Id.* at ¶ 50.a.

### iv.    Agreement Identification Requirement

The Court must also evaluate any agreement made in connection with the proposed settlement.  *See* Fed. R. Civ. P. 23(e)(2)(C)(iv) & (e)(3).  Here, the settlement agreement presently before the Court is the only agreement.  Thus, the Court need not evaluate any additional agreements outside of the settlement agreement.  *Accord Alvarez*, 2021 WL 1234878, at *8.  Thus, all four prongs under Rule 23(e)(2)(C) favor granting final approval.

### d.    Equitable Treatment of Class Members

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Comm. Notes.

The Court finds the treatment of the class members to be equitable because recovery by each individual class member is dependent on the number of workweeks and PAGA pay periods credited to them.[54]  Moreover, the service award for Godinez—discussed below, *see infra* Part IV.C.—does not disturb that finding, in view of the evidence submitted that speaks to Godinez's level of involvement throughout this case and the risk that she has taken through her participation.  Therefore, this factor weighs in favor of granting final approval.

### 3.    The Ninth Circuit's "*Churchill* Factors"

Having found that all four factors under Rule 23(e)(2) favor granting final approval, the Court now turns to the eight "*Churchill* factors" that the Ninth Circuit uses to evaluate the fairness of a settlement agreement.

### a.    Strength of Godinez's Case

"An important consideration in judging the reasonableness of a settlement is the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement."  *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010).  The proposed settlement is "not to be judged against . . . what might have been awarded in a judgment in favor of the class."  *Id.*  This factor is generally satisfied when a plaintiff

---

[54]    *Id.*

overcame barriers to make her case. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

The Court has presided over three motions to compel discovery and two motions for preliminary settlement approval, and the settlement agreement was proposed by the mediator. Based upon that perspective alone, the Court is comfortable finding that Godinez advanced a strong case that would continue to be litigated vigorously in the absence of a settlement agreement. Furthermore, the settlement agreement takes the individualized claims into account; those claims would likely be vigorously litigated in the absence of a settlement agreement. Accordingly, the Court finds that this factor supports final approval.

### b.    Risk, Expense, Complexity, and Likely Duration of Further Litigation

The second factor in assessing the fairness of the proposed settlement is the complexity, expense, and likely duration of the lawsuit if the parties had not reached a settlement agreement. *See Officers for Justice*, 688 F.2d at 625. Because this factor closely mirrors the requirement in Rule 23(e) concerning "the costs, risks, and delay of trial and appeal," the Court concludes that it need not duplicate its analysis. Fed. R. Civ. P. 23(e)(2)(C)(i); *see also id.*, 2018 Advisory Comm. Notes (noting that many of these factors "focus on comparable considerations"). As discussed above, *see supra* Part III.D.2.c.i., this factor weighs in favor of granting final approval.

### c.    Risk of Maintaining Class Action Status through Trial

Although the Court had preliminarily certified the class, the certification was for settlement purposes only.[55] An "order that grants or denies class certification may be altered or amended before the final judgment." Fed. R. Civ. P. 23(c)(1)(C).

The Court agrees with Godinez's argument with respect to this factor: the risks that Godinez would ultimately lose—whether at the class certification stage, through a dispositive motion, or at trial—was substantial.[56] The Court thus finds that the complexity of the class certification process and Merritt's likely opposition pose a risk to maintaining the class through trial. Accordingly, this factor weighs in favor of final approval.

---

[55]    *See* Order Granting Preliminary Approval.

[56]    *See generally* Motion for Settlement Approval.

### d.    Amount Offered in Settlement

The fourth factor in assessing the fairness of the proposed settlement is the amount offered. "Of course, the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). The Ninth Circuit has explained that "the proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625. Rather, any analysis of a fair settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation.

Here, the parties agreed to settle all claims for a total sum of $1,750,000.[57] That figure equates to an average individual recovery of approximately $312.25 and a maximum individual recovery of approximately $1,212.03.[58] The average individual recovery amount initially gave the Court pause, as it articulated in the hearing, but the Court now concludes that the settlement amount is appropriate in view of the risks of continued litigation and the substantial recovery for the class, such that this factor favors final approval of the settlement agreement. *See Aarons v. BMW of N. Amer., LLC*, 2014 WL 4090564, at *11 (C.D. Cal. Apr. 29, 2014) (noting that while settlements will not make most class members completely whole, class members will "discount their claims to obtain a certain and timely recovery, rather than bear the significant risk and delay associated with further litigation"); *Vasquez*, 266 F.R.D. at 489 (noting that "the risk of continued litigation balanced against the certainty and immediacy of recovery from the [s]ettlement" is a relevant factor).

### e.    Extent of Discovery and Stage of Proceedings

The fifth factor requires the Court to gauge whether Godinez had sufficient information to make an informed decision about the merits of her case. *See In re Mego*, 213 F.3d 454, 459 (9th Cir. 2000). The more discovery that has been completed, the more likely it is that the parties have "a clear view of the strengths and weaknesses of their cases." *Young v. Polo Retail, LLC*, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks omitted).

The parties reached settlement only after each side filed motions to compel discovery. That history gives the Court confidence that Godinez possessed sufficient information to make an informed decision about the settlement. *See Young*, 2007 WL 951821, at *4. Additionally, because the parties conducted settlement negotiations with

---

[57]    *Id.*

[58]    *Id.* at 15:24-26.

the assistance of a mediator, the Court has further reason to conclude that the parties
possessed "a clear view of the strengths and weaknesses of their cases." *Vasquez*, 266
F.R.D. at 489 (quoting *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y.
1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)).  As such, this factor weighs in favor of granting
final approval of the settlement agreement.

### f.    Experience and View of Counsel

The sixth factor that the Court considers is the experience of counsel, because
"[t]hey are the ones who are most closely acquainted with the facts of the underlying
litigation." *Vasquez*, 266 F.R.D. at 489.  "Parties represented by competent counsel are
better positioned than courts to produce a settlement that fairly reflects each party's
expected outcome in litigation."  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.
1995).  However, while counsel's views are instructive, they do not entitle the plaintiff to
a presumption of fairness.  *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th
Cir. 2019).

Here, lead Class Counsel has extensive experience handling class action cases.[59]
The Court is satisfied that his experience has allowed Godinez to evaluate the merits of
the claims and the risks associated with prosecuting them.  Class Counsel also support the
final outcome as fair and reasonable.[60]  The Court accordingly credits Class Counsel's
determination and finds that this factor weighs in favor of final approval.

### g.    Presence of a Governmental Participant

Because no government entity participated in litigating this case, the seventh factor
is irrelevant.  *See Klee v. Nissan N. Am., Inc.*, 2015 WL 4538426, at *9 (C.D. Cal. July 7,
2015), *aff'd* (Dec. 9, 2015).

### h.    Reaction of the Class Members to the Proposed Settlement

Finally, in evaluating the fairness, adequacy, and reasonableness of the settlement,
the eighth factor that courts consider is the reaction of the class to the settlement.  *See
Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003).  "It is established that the absence of a
large number of objections to a proposed class action settlement raises a strong
presumption that the terms of a proposed class action settlement are favorable to the class
members."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29
(C.D. Cal. 2004); *see also Arnold v. Fitflop USA, LLC*, 2014 WL 1670133, at *8 (S.D. Cal.
Apr. 28, 2014) (concluding that the class members' reaction to the settlement "presents

---

[59]    *See* First Jackson Declaration ¶¶ 17 & 18.

[60]    *Id.* at ¶ 7.

the most compelling argument favoring settlement"). Here, no class member has opted
out nor objected to the settlement agreement.[61]  That fact weighs strongly in favor of final
approval.

### 4.    Conclusion on Final Settlement Approval

In conclusion, all factors used to assess the adequacy, fairness, and reasonableness
of a class settlement—including both the factors prescribed to the Court under
Rule 23(e)(2) and the additional Ninth Circuit "*Churchill* factors"—point in favor of
granting final approval.  Therefore, the Court **GRANTS** the Motion for Settlement
Approval.

## IV.  ATTORNEYS' FEES, COSTS, SERVICE AWARDS, AND ADMINISTRATION COSTS

### A.    Attorneys' Fees

Under the settlement agreement, Class Counsel is permitted to seek the Court's
approval of attorneys' fees and any documented and reasonable out-of-pocket expenses.
Class Counsel have requested approval of attorneys' fees totaling $437,500.00, which
represents 25% of the settlement fund.[62]

In the Ninth Circuit, "the fee applicant bears the burden of submitting 'evidence
supporting the hours worked and rates claimed.'"  *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115,
1121 (9th Cir. 2000) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  The Ninth
Circuit has "a 'preference' for contemporaneous records" but has "never held that they
are absolutely necessary."  *Id.*  Rather, "fee requests can be based on 'reconstructed
records developed by reference to litigation files.'"  *Id.* (quoting *Davis v. City & Cnty. of
San Francisco*, 976 F.2d 1536, 1542 (9th Cir. 1992), *opinion vacated in part on denial of
reh'g*, 984 F.2d 345 (9th Cir. 1993)).

"In a certified class action, the court may award reasonable attorneys' fees and
nontaxable costs that are authorized by law or by the parties' agreement."
Fed. R. Civ. P. 23(h).  "Where a settlement produces a common fund for the benefit of
the entire class, courts have discretion to employ either the lodestar method or the
percentage-of-recovery method" when determining the reasonableness of a request for

---

[61]    Motion for Settlement Approval 6:3-4; *see also* Hearing Transcript 13:20-14:5.

[62]    *See* Motion for Fees and Costs.

attorneys' fees. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). Each method is discussed below.

### 1. Percentage-of-the-Recovery Method

Applying the percentage-of-recovery method, district courts within the Ninth Circuit typically calculate "25% of the fund" as the "benchmark" for a reasonable fee award. *Id.*; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). A departure from the 25% benchmark requires an "adequate explanation in the record for any 'special circumstances' justifying [the] departure." *In re Optical Disk Drive Prods. Liab. Antitrust Litig.*, 959 F.3d 922, 942 (9th Cir. 2020).

Here, Class Counsel request that the Court approve a fee award of $437,500, which is equivalent to exactly 25% of the settlement amount—the benchmark amount. Therefore, the Court need not examine additional factors to conclude that the fee award is reasonable. *See id.*

### 2. The Lodestar Method and Lodestar Cross-Check

Under the lodestar method, the Court "multipl[ies] the number of hours the prevailing party reasonably expended on the litigation . . . by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 941. Although the lodestar figure is "presumptively reasonable," the Court may adjust it upward or downward reflecting a host of "reasonableness" factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 941-42.

Here, Class Counsel allege that they worked 500.8 hours collectively:

- Attorney Armond Jackson, a senior attorney with approximately 12.5 years of experience, asserts that he worked 469.1 hours at a rate of $725/hour;
- Jackson asserts that Attorney Andrea Fernandez-Jackson worked 17.8 hours at a rate of $515/hour;
- Jackson asserts that Attorney Anthony Filer Jr. worked 12.8 hours at a rate of $250/hour;
- And Jackson asserts that Yesenia Villalba, a paralegal, worked 1.1 hours at a rate of $145/hour.[63]

---

[63]     *See* Decl. of Armond M. Jackson in Supp. of Motion for Fees and Costs (the "Second Jackson Declaration") [ECF No. 75-2] ¶ 8; *id.*, Ex. B.

Class Counsel's alleged hours billed and resulting lodestar calculation are summarized in the table below:

| Timekeeper | Hourly Rate | Total Hours | Total Lodestar |
|---|---|---|---|
| *Armond Jackson* | $725 | 469.1 | $340,097.50 |
| *Andrea Fernandez-Jackson* | $515 | 17.8 | $9,167.00 |
| *Anthony Filer Jr.* | $250 | 12.8 | $3,200.00 |
| *Yesenia Villalba* | $145 | 1.1 | $159.50 |
| **TOTAL** | | **500.8** | **$352,624.00** |

The Court turns to the 2022 Real Rate Report:  An Analysis of Law Firm Rates, Trends, and Practices, WOLTERS KLUWER (2022 ed.) (the "Real Rate Report"), as a useful guidepost to assess the reasonableness of these hourly rates in the Central District. *See Mann v. FCA US LLC*, 2020 WL 7978500, at *3 (C.D. Cal. Nov. 11, 2020).  The Real Rate Report offers several relevant data points for fees in the Central District.  In Los Angeles, partners who practice labor and employment law at mid-sized firms have an hourly rate ranging from $567 (first quartile) to $870 (third quartile), with a median rate of $677.  *See* Real Rate Report 178.  Labor and employment associates in Los Angeles have an hourly rate ranging from $335 (first quartile) to $525 (third quartile), with a median rate of $380.  *Id.* at 27.  Employment litigation paralegals generally have an hourly rate ranging from $180 (first quartile) to $290 (third quartile), with a median rate of $234.  *Id.* at 49.

Here, the rates all fall within or below the range outlined in the Real Rate Report.

The Court now turns to the lodestar cross check, which entails an evaluation of the multiplier implied by Class Counsel's requested fees ($437,500) and Class Counsel's lodestar fees (computed above as $352,624).  The lodestar calculation results in a multiplier of approximately 1.24.  That multiplier is squarely in the range of lodestar multipliers awarded in wage and hour class actions—in fact, it falls at the lower end.  *See, e.g.*, *Reyes v. Experian Info. Sols., Inc.*, 856 F. App'x 108, 110 (9th Cir. 2021) (finding that a 25% award with a 2.88 multiplier was similar to awards "routinely approved" by courts in the Ninth Circuit); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051–54 (9th Cir. 2002) (affirming a 25% fee recovery, explaining that the 3.65 multiplier "was within the range of multipliers applied in common fund cases," and recognizing that courts applied multipliers of 1.0 to 4.0 in 83% of 23 class action suits surveyed); *Attia v. Neiman Marcus Group, LLC*, 2019 WL 13089601, at *7 (C.D. Cal. Feb. 25, 2019) (quoting *Parkinson v.*

*Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1170 (C.D. Cal. 2010)) ("multipliers may range from 1.2 to 4 or even higher").

Because Class Counsel's request meets the requirements of both the percentage-of-the-recovery method and the loadstar method, the Court **GRANTS** Class Counsel's request for $437,500.00 in attorneys' fees.

## B.    Costs

In their Motion for Fees and Costs, Class Counsel state that they incurred litigation costs totaling $13,505.60.[64]  Those costs represent only 0.77% of the total settlement award.  Because the costs appear to be reasonable and incurred for the benefit of the class, *see In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, 1989 WL 73211, at *6 (C.D. Cal. Mar. 9, 1989), the Court **APPROVES** the cost reimbursement request.

## C.    Service Awards

Class Counsel request that this Court grant a $5,000 incentive award to Godinez for serving as the class representative.  Service awards, also known as "[i]ncentive awards," are "fairly typical" in class action cases.  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  They are discretionary in nature and are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and . . . to recognize their willingness to act as a private attorney general."  *Id.* at 958-59.  "[D]istrict courts . . . evaluate the propriety of requested incentive payments 'using relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Roes, 1-2*, 944 F.3d at 1057 (quoting *Staton*, 327 F.3d at 977 (affirming $5,000 service awards but rejecting $20,000 awards as unreasonable)).

"Generally, in the Ninth Circuit, a $5,000 incentive award is presumed reasonable."  *Lee v. Glob. Tel*link Corp.*, 2018 WL 4625677, at *12 (C.D. Cal. Sept. 24, 2018); *Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017) (finding a $5,000 award reasonable for the class representatives' participation throughout the litigation and the risk to their reputation); *see also Roes, 1-2*, 944 F.3d at 1057.  When the incentive award is unusually large, especially "relative to the size of the cash payments that can be claimed by class members," a court considers that discrepancy a "serious red flag[] that the defendants may have tacitly bargained for the named

---

[64]    Motion for Fees and Costs 15:24-25.

plaintiffs' support for the settlement by offering them significant additional cash awards."
*Id.* (citing *Staton*, 327 F.3d at 975) ("finding that payments to certain identified class
members that were 'on average, *sixteen times* greater' than the damages that other
unnamed class members would receive, and together made up roughly 6% of the total
settlement, 'raise[d] serious concerns as to [the settlement's] fairness, adequacy and
reasonableness,' particularly because there was 'no sufficient justification in the record
for this differential in the amount of damage awards and the process for awarding
them'") (emphasis added).

In view of Godinez's engagement in this litigation over the past three years, and
the associated reputational risk that she incurred, the Court concludes that a service
award is fair and reasonable. Accordingly, the Court **APPROVES** a $5,000 service
award for Godinez and **DIRECTS** that the award be paid pursuant to the terms of the
settlement agreement.

**D. Administration Costs**

Finally, Class Counsel request $25,000 in administration costs for Phoenix Class
Action Administration Solutions, the claims administrator.[65] That request "appears to be
reasonable, as those costs relate to designing and executing the administration of the
settlement agreement, including mailing notices and processing correspondence from
members of the class." *Brooks v. Life Care Centers of Am., Inc.*, 2015 WL 13298569, at *5
(C.D. Cal. Oct. 19, 2015). Thus, the Court **APPROVES** those costs.

## V. DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.    Final approval of the class action settlement is **GRANTED**.

2.    An award of attorneys' fees in the amount of $437,500 is **GRANTED**.

3.    An award of litigation costs in the amount of $13,505.60 is **GRANTED**.

4.    A service award for the named Plaintiff, Karla Godinez, in the amount of
$5,000 is **GRANTED**.

5.    An award of administration costs for Phoenix Class Action Administration
Solutions in the amount of $25,000 is **GRANTED**.

---

[65]    Motion for Settlement Approval 17:1-8.

6.    Judgment will issue accordingly.

**IT IS SO ORDERED.**

Dated:__January 2, 2025_____                    _____

John W. Holcomb
UNITED STATES DISTRICT JUDGE